962 F.2d 602
 Paul D. SWANSON, Plaintiff-Appellant,
v.
VILLAGE OF LAKE IN THE HILLS, the Board of Police
Commissioners of Village of Lake in the Hills, Barbara Keys,
Village President of the Village of Lake in the Hills, in
her official capacity, et al., Defendants-Appellees.
 No. 91-2177.
 United States Court of Appeals,
Seventh Circuit.
 Argued March 4, 1992.
Decided April 29, 1992.
 
 Michael K. Havrilesko (argued), Ellen B. Lynch, Havrilesko & Associates, Rockford, Ill., for plaintiff-appellant.
 David McArdle (argued), Zukowski, Rogers, Flood, McArdle & O'Connor, Crystal Lake, Ill., Valeree D. Marek, Zukowski, Rogers, Flood & McArdle, Chicago, Ill., for defendants-appellees.
 Before CUMMINGS and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 FLAUM, Circuit Judge.
 
 
 1
 Paul Swanson filed an action under 42 U.S.C. § 1983 against the Village of Lake in the Hills (LITH), the LITH Police Commission, and various LITH officials, alleging that disciplinary actions taken against him in his capacity as sergeant on the LITH police force violated his right to due process. He also sought relief on the state law ground of invasion of privacy. The district court granted the defendants' motion for summary judgment on all counts. We affirm.
 
 
 2
 Swanson attacks the procedures employed in two separate disciplinary actions. The events giving rise to the first began in April 1985, when Swanson was involved in the DUI arrest of Allen J. Patrick, Jr., who died while in custody. After an investigation and hearing into the matter, the LITH Police Commission suspended Swanson for 30 days without pay. Swanson filed a lawsuit in state court to appeal the disciplinary action. The Patrick incident attracted a lot of attention in the press. Patrick's estate had filed a multi-million dollar lawsuit against both Swanson and LITH, and most of the Commission hearings into the charges against Swanson were open to the public.
 
 
 3
 The events leading up to the second disciplinary action began on July 10, 1986, when Swanson responded to a call where a victim claimed to have been shot at six times. As a result of Swanson's involvement, the alleged victim was issued a ticket with a maximum penalty of a $1,000 fine and one year in jail, while the alleged perpetrator was ticketed for discharging a firearm within village limits, which carries a maximum penalty of a $50 fine.
 
 
 4
 By memorandum dated August 13, 1986, Swanson received notification that Police Chief James Wales would be conducting an investigative interview on August 15, 1986, into possible charges against Swanson stemming from the shooting incident. Swanson was advised that he had the right to have counsel present at the interview, and that any admissions he made at the interview could be used as evidence of misconduct or as the basis for disciplinary action. Because Swanson's counsel was unavailable, the interview was not conducted until August 20, 1986, at which time, with counsel present, Swanson gave his version of the shooting incident.
 
 
 5
 Swanson was hospitalized on August 23, 1986, and then went on disability leave. In a November 25, 1986, letter, Chief Wales notified Swanson that he must submit to a psychological examination before he could be reassigned to active street duty. The examination was scheduled for December 2, 1986, Swanson's anticipated return date. The examination took place as scheduled and, on December 11, 1986, Chief Wales informed Swanson that charges would be brought against him based in part on the psychological evaluation report. At that time, Swanson was allowed to review the report, although he was not given a copy of it.
 
 
 6
 On December 19, 1986, Swanson was notified of a special meeting before the Police Commission to be conducted the following day. Swanson attended the meeting, and received copies of the complaints filed with the Commission by Chief Wales. The complaints alleged failure to report or take appropriate action, conduct unbecoming an officer, and incompetency. The Commission voted to suspend Swanson without pay, pending final disciplinary action on the complaints, and scheduled an evidentiary hearing on the complaints for January 14, 1987.
 
 
 7
 During the three weeks prior to the hearing, Swanson and his counsel had the opportunity to conduct discovery and issue subpoenas. On January 14, 1987, his counsel presented numerous pretrial motions. The hearings commenced January 15, 1987, and were closed to the public. Swanson was permitted to review evidence, cross-examine witnesses, call witnesses and testify on his own behalf, make objections and offers of proof, and he had the option of making opening and closing arguments. After over 40 hours of hearings, the Commission ordered that Swanson be discharged from the LITH police force as of January 31, 1987.
 
 
 8
 These hearings were again subject to intense scrutiny by the local press. A portion of the psychological report was printed in various newspaper articles, and Swanson alleges that the defendants leaked this personal information.
 
 
 9
 We review de novo the district court's grant of summary judgment, drawing all reasonable inferences in the light most favorable to the non-moving party. Kreutzer v. A.O. Smith Corp., 951 F.2d 739, 743 (7th Cir.1991). However, the non-moving party may not simply rest on his pleadings, but must demonstrate by specific evidence that there is a genuine issue of triable fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). We will affirm only if we determine that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 10
 The argument section of Swanson's brief makes no more than a single general mention to the events of 1985 which led to his suspension after the Patrick incident. Thus any claims based on the 1985 disciplinary hearing are waived. Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, 957 F.2d 302, 305 (7th Cir.1992) ("[W]e have no obligation to consider an issue that is merely raised, but not developed, in a party's brief.").
 
 
 11
 As to the disciplinary action arising out of the shooting incident, the defendants conceded for purposes of the motion for summary judgment that Swanson had a property interest in his job with the police force.[1] Relying primarily on D'Acquisto v. Washington, 640 F.Supp. 594 (N.D.Ill.1986), the district court found that Swanson received all the due process that was constitutionally required. We agree.
 
 
 12
 To determine whether adequate due process was provided, we must balance 1) the importance of the private interest at stake; 2) the magnitude of the government's interest; and 3) the quality of the procedures employed in light of the relative strengths of the competing interests. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-43, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). With respect to his suspension without pay, assuming that Swanson was entitled to a pre-suspension hearing,[2] he was constitutionally entitled to no more than notice of the charges against him and an opportunity to be heard. See Smith v. Town of Eaton, Ind., 910 F.2d 1469, 1472 (7th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991). Swanson received both. On August 13, 1986, Swanson was sent notice of an investigative interview into possible charges stemming from the shooting incident, and a week later this interview was conducted. On December 11, 1986, he met with Chief Wales and was shown a copy of the psychological evaluation. Chief Wales informed him that charges would be brought against him based in part on that report. In both meetings, Swanson was given the opportunity to respond to potential charges. Swanson was then notified of a special meeting before the Police Commission, attended this meeting, and received copies of the charges filed against him. The minutes from the special meeting indicate that Swanson argued that any suspension should be with pay. Only after all this did the Police Commission vote to suspend him without pay. Swanson received all the due process that was constitutionally required.
 
 
 13
 In Loudermill, the Supreme Court held that prior to termination of employment, a public employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." 470 U.S. at 546, 105 S.Ct. at 1495. As demonstrated in the context of his suspension, Swanson certainly had adequate notice of the charges against him. The trial-like proceedings beginning on January 14, 1987, which preceded the Commission's decision to terminate Swanson, provided Swanson with ample opportunity to hear his employer's evidence and present his defense. The procedures afforded to Swanson prior to his termination probably exceeded those mandated by the Constitution. Cf. Panozzo v. Rhoads, 905 F.2d 135 (7th Cir.1990).
 
 
 14
 Swanson compares his case to Swank v. Smart, 898 F.2d 1247 (7th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 147, 112 L.Ed.2d 113, (1990), in which we found a violation of procedural due process when a police officer was terminated from his job with the police force. The basis of the constitutional violation in that case was that the police chief was effectively allowed to make an ex parte presentation of evidence which the terminated police officer had no opportunity to review and rebut. We find Swank inapposite. Here, Swanson had the opportunity to review and rebut all evidence before the Commission.
 
 
 15
 Swanson identifies several specific points during the disciplinary process as evidence that he was denied due process. None of these instances, however, rise to the level of a constitutional violation. He complains that he was given less than 24-hours notice of the December 20, 1986, special meeting. In Panozzo, this Court explained, "If oral notice given while a hearing is progressing is sufficient to satisfy due process, then explicit written notice received the night before the scheduled hearing is certainly sufficient." 905 F.2d at 139.
 
 
 16
 Swanson also alleges that the Commission was biased against him because of litigation against LITH which he had pending in state court. The Supreme Court has accorded a "presumption of honesty and integrity" to administrative decisionmakers. Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464-65, 43 L.Ed.2d 712 (1975). The fact that Swanson was appealing the results of the Patrick disciplinary action in state court does not overcome this presumption.
 
 
 17
 Swanson complains that he did not receive a copy of the psychological examination from Chief Wales. Yet the defendants argue persuasively that Swanson had other means of obtaining the report, including requesting a copy from the doctor who conducted the examination, obtaining a copy through discovery, or by subpoena. Swanson does not allege that he ever tried to obtain the report through any of these alternate routes, or that any attempts were rebuffed. Moreover, Swanson reviewed the report during his December 11, 1986, meeting with Chief Wales. The fact that Chief Wales did not give him a copy of it at that time does not violate due process.
 
 
 18
 In his invasion of privacy claim, Swanson charges that the defendants--in particular, Barbara Key[3] and Chief Wales--maliciously released to the press personal information contained in the psychological evaluation. He has submitted numerous newspaper articles to buttress this allegation. The defendants deny these charges and, as the district court correctly found, a careful reading of these articles in no way supports Swanson's allegations. Summary judgment was appropriate on this claim.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 The district court dismissed Swanson's claim that he had a liberty interest at stake in the 1986 disciplinary proceedings, since the plaintiff alleged no liberty interest in his complaint. Swanson contests this on appeal. Even if the court assumes arguendo that Swanson did sufficiently allege a deprivation of a liberty interest, he still received all the process due prior to his suspension and termination
 
 
 [2]
 There is support for the argument that Swanson could have been suspended without a pre-deprivation hearing. D'Acquisto involved the suspension of police officers, and there the court found that when balanced against the government's interest in effective law enforcement, "[t]he absence of a pre-suspension hearing is not necessarily fatal to the Police Board procedures." D'Acquisto, 640 F.Supp. at 613; see also Domiano v. Village of River Grove, 904 F.2d 1142, 1149 (7th Cir.1990) (If Domiano's refusal as fire chief to abide by city policy "posed a threat to public safety and the efficient operation of the fire department, [Village officials] could have suspended [him] until the Village board could consider the matter and Domiano had an opportunity to explain his position.")
 
 
 [3]
 The affidavit of the President of LITH states her name as Barbara Key, not Barbara Keys as listed in the complaint