**Michael J. BAKALIS, Plaintiff,**

**v.**

**BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT NO. 504, COUNTY OF COOK, STATE OF ILLINOIS (TRITON COLLEGE); Ms. Jenni Golembeski; Mr. Mark R. Stephens; Mr. Merrill Becker; Mr. James Durkin, Defendants.**

**No. 93 C 483.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 13, 1996.

Theodore A. Boundas, William P. Rector, Marie Louise Nienhuis, and Alexis J. Rogoski, Peterson & Ross, Chicago, IL, for Plaintiff.

Gregory E. Rogus, Lori Dianne Isaacs, Segal, McCambridge, Singer & Mahoney, Ltd.; Martin A. Dolan, Dolan & Shannon, P.C.; and John B. Murphey and Simone Marie Boutet, Rosenthal, Murphey, Coblentz & Janega, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

On April 28, 1995, plaintiff, Michael J. Bakalis, Ph.D., filed his second amended complaint ("complaint") against defendants, Board of Trustees of Community College District No. 504 ("Board") and four members of the Board, Jenni Golembeski, Mark Stephens, Merrill Becker, and James Durkin

(collectively, "individual defendants"). Dr. Bakalis brought this action pursuant to 42 U.S.C. § 1983 alleging that defendants terminated his employment without due process of law in violation of the Fourteenth Amendment (count III). The remaining counts of the complaint are state-law claims, which include breach of contract (count I), breach of covenant of good faith and fair dealing (count II), tortious interference with contract (count IV), and defamation (count V).

The Board has filed a motion for summary judgment, and the individual defendants have as well. For the reasons stated below, the Board's motion is denied, and the individual defendants' motion is granted in part and denied in part.

### Background

The following facts are undisputed. Dr. Bakalis was employed by the Board as President of Triton College from October 25, 1990 until July 7, 1992, two years prior to the completion of his written employment contract. In April, 1992, the Triton College Faculty Association held a special meeting at which they decided to issue a "vote of no confidence" in Dr. Bakalis and to request the Board to begin searching for a new President. At a meeting on May 26, 1992, the Board voted to retain a law firm to determine whether there was cause to terminate Dr. Bakalis' contract. By resolution, dated June 23, 1992, the Board stated that it would seek to terminate Dr. Bakalis for cause pursuant to paragraph 10(B) of his employment contract[1] and set forth the procedures that it planned to follow in doing so. On July 7, 1992, the Board held a pre-termination hearing. to decide whether it should terminate plaintiff's contract. After the hearing, a majority of the Board voted to terminate the contract. Dr. Bakalis then requested a post-termination hearing. Ms. Golembeski appointed three members of the Board, two of whom had previously voted in favor of dismissing Dr. Bakalis, to conduct the hearing. In the middle of the post-termination hearing, Dr. Bakalis announced through his counsel that he would not further participate in the hearing and was withdrawing from it. The hearing committee held two more sessions at which neither Dr. Bakalis nor his attorney were present. The committee subsequently recommended to the Board that because Dr. Bakalis' request for a post-termination was withdrawn, his termination be considered final. On January 19, 1993, the Board unanimously voted to adopt the hearing committee's recommendation and terminated plaintiff.

### Due Process

Dr. Bakalis was entitled to due process of law when he was terminated as President of Triton College only if he had a property interest in retaining his position. Defendants argue that Dr. Bakalis neither had such a property interest nor has stated a claim for a procedural due process violation. These issues have, however, already been resolved in favor of Dr. Bakalis. *Bakalis v. Board of Trustees of Community College District No. 504*, No. 93 C 0483, 1993 WL 528084 (N.D.Ill. Dec. 17, 1993) ("*Bakalis I*"), aff'd sub nom *Bakalis v. Golembeski*, 35 F.3d 318 (7th Cir.1994) ("*Bakalis II*"). In *Bakalis I*, 1993 WL 528084 at *3, Judge Holderman held that plaintiff had a property interest in his position and that defendants were not entitled to qualified immunity. Defendants appealed Judge Holderman's holding on qualified immunity. In affirming Judge Holderman' decision, the Seventh Circuit in *Bakalis II*, 35 F.3d at 323, "evaluate[d] whether the actions taken by the defendants violated Dr. Bakalis' right to due process of law." The Seventh Circuit further held that "a body that

---

1. Paragraph 10(B) of the contract permitted the Board to discharge Dr. Bakalis for cause and provided:

 If the Board seeks to terminate Dr. Bakalis for cause it shall first provide Dr. Bakalis with full notice of the reasons for his termination and an opportunity to respond to those reasons at a hearing. Such hearing shall be before the Board or if the Board so determines, before a committee of the Board. If the hearing is conducted by the committee, the committee will report the findings to the full Board. The full Board will then accept, reject or amend the committee's recommendation as to whether just cause exists to terminate this Agreement. If the full Board then determines to terminate this Agreement, the Board shall specify the effective date of the termination.

has prejudged the outcome [of a hearing] cannot render a decision that comports with due process" and stated that "there is evidence that members of the Board had prejudged Dr. Bakalis' fate prior to the hearing; this prejudgment, if it existed, rendered the hearing violative of due process." *Id.* at 326. In determining that Dr. Bakalis was entitled to due process of law when defendants terminated his employment as President, the Seventh Circuit necessarily decided that he had a property interest in retaining his position as President and has stated a cause of action for a procedural due process violation.

 Under the law of the case doctrine, once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case. This consistency protects parties "from the expense and vexation attending multiple lawsuits, conserves judicial action, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Key v. Sullivan,* 925 F.2d 1056, 1060 (7th Cir.1991) (quoting *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979)). The law of the case doctrine "is based on the salutary and sound public policy that litigation should come to an end." *Id.* Accordingly, because the Seventh Circuit in *Bakalis II,* necessarily ruled that Dr. Bakalis had a property right in continuing to act as President of Triton College, the law of the case doctrine prevents me from re-examining that ruling.[2]

 Similarly, the law of the case doctrine prevents me from redetermining whether plaintiff waived his due process claim by deciding not to participate in the post-termination hearing. The Seventh Circuit in *Bakalis II,* 35 F.3d at 321, was fully aware of Dr. Bakalis' decision not to take part in that hearing. In spite of Dr. Bakalis' conduct in this regard, the Court found that Dr. Bakalis would prevail on his due process claim if a trier of fact were to credit his evidence showing that members of the Board had prejudged him prior to the pre-termination hearing. *Id.* at 326. Thus the Seventh Circuit necessarily determined that Dr. Bakalis had a due process claim that he did not waive by deciding not to attend the post-termination hearing.[3]

 Defendants argue that the "rule of necessity" bars Dr. Bakalis from pursuing his due process claim because under Illinois law and the employment contract, the Board had the nondelegable duty to hire and fire a President. Defendants maintain that, therefore, even if they were biased, it was their obligation to make the employment determination. Judge Holderman rejected this argument. *See Bakalis II,* 35 F.3d at 327 n. 11. Although the Seventh Circuit in *Bakalis II* had "no occasion to address this argument on the merits," it instructed:

> [W]e do not believe that the record before us would support a defense based on the rule of necessity. . . . It appears that, under the law of Illinois, an administrative body can invoke the rule of necessity when, as a corporate body, it has a conflict of interest *and* a nontransferable duty to adjudicate the matter at hand. . . . Here, however, each defendant is accused of a personal bias and, until a sufficient number of members of the Board recused themselves, there was no occasion to invoke the rule of necessity. The rule does not be-

---

2. In finding that plaintiff had a property interest in his employment, the Seventh Circuit did not discuss the separate provision in Dr. Bakalis' contract that allowed defendants to terminate plaintiff without cause, and without procedures. It is undisputed that defendants sought to terminate Dr. Bakalis' employment for cause, *i.e.,* pursuant to paragraph 10(B) of the contract. Because defendants chose to dismiss Dr. Bakalis under this paragraph, they were obligated to accord him the procedures specified. Consequently, the fact that defendants could have terminated plaintiff without cause is not relevant.

3. The law of the case doctrine also prevents defendants from arguing that there is not sufficient evidence to create a question of fact as to whether defendant Becker was biased. The Seventh Circuit found that the evidence that Dr. Bakalis presented, if credited by a trier of fact, would justify a conclusion that Mr. Becker was not an impartial adjudicator. *See id.* at 326. Defendants do not contend that I should not adhere to the Seventh Circuit's determination on the basis that they are introducing "substantial new evidence." *Key,* 925 F.2d at 1060.

come applicable until there are sufficient recusals to render the body without a quorum.

*Id.* (emphasis supplied) (citations omitted). Thus the Seventh Circuit held that if Board members were pre-biased, then they were required to excuse themselves from participating in decisions respecting plaintiff so long as a quorum (*i.e.*, a majority of the Board, which is four members) could have been achieved without them. *See also Board of Education of Community Consolidated High School District 230 v. Illinois Educational Labor Relations Board,* 165 Ill. App.3d 41, 518 N.E.2d 713, 717–18, 116 Ill. Dec. 91, 95–96 (4th Dist.1987) (holding rule of necessity inapplicable where recusal of board member left quorum); *Shipp v. Davis,* 48 Ill.App.3d 463, 362 N.E.2d 822, 825, 6 Ill.Dec. 187, 190 (3rd Dist.1977) (finding under rule of necessity that it was proper for prejudiced individual not to recuse himself from Board, as his recusal would have deprived Board of quorum).

Defendants contend that under this reasoning, they should prevail. They argue that had the four individual defendants recused themselves from the pre-termination hearing on account of their alleged bias against Dr. Bakalis, the Board would have lacked a quorum, as it would have been left with only three members. The rule of necessity, therefore, required the individual defendants to participate in Dr. Bakalis' hearing. I do not agree. Defendants do not admit that the four individual defendants were prejudiced against plaintiff. The Seventh Circuit found that whether or not these Board members had prejudged Dr. Bakalis and therefore could not impartially adjudicate him was a question for the trier of fact. *Bakalis II,* 35 F.3d at 326. The jury could find that only one, two, or three out of the four individual defendants were biased. In any of those cases, recusal of the biased Board members would not have deprived the Board of a quorum.

The rule of necessity also cannot preclude plaintiff from claiming that defendants violated his right to due process with regard to the post-termination hearing. Only three members of the Board were needed to conduct this hearing. Thus even if all four individual defendants were biased, their recusal would have left three non-biased Board members to conduct the post-termination hearing. Defendants disagree. They argue that because one non-defendant Board member declined to participate in the post-termination hearing due to illness and a second non-defendant Board member resigned from the Board, recusal of the four individual defendants would have left one Board member to conduct the hearing. The record does not show, however, any reason why the post-termination hearing could not have been delayed until after the ill member became well and after the appointment of a new member. Defendants have set forth no evidence indicating that the hearing could not have been so postponed, that such a postponement would have caused an unreasonable delay, or that plaintiff did not agree to a postponement. Accordingly, the rule of necessity does not entitle defendants to summary judgment on Dr. Bakalis' due process cause of action.

■■■ The individual defendants further argue that they are entitled to the defense of qualified immunity, contending that in light of the rule of necessity, it was not clearly established that any bias on their part violated Dr. Bakalis' right to due process of law. *See id.* at 322–23 (governmental officials are accorded qualified immunity if their conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known") (citation omitted). In *Bakalis II,* the individual defendants attempted to make the same argument. Although the Court declined to rule since the argument was made only in their reply brief, it went on to hold that in any case it did not believe that the record before it supported a defense based on the rule of necessity. *Id.* at 327, n. 11. Because there is a question of fact as to whether each of the four defendants was actually biased, it is not clear at this point in time that the rule of necessity applied. Accordingly, the individual defendants' motion for summary judgment on plaintiff's due process claim on the basis that the rule of necessity renders them qualifiedly

immune is denied.[4]

### Breach of Contract and Duty of Good Faith and Fair Dealing

■ The Board argues that it is entitled to summary judgment on counts I and II of the complaint asserting causes of action for breach of contract and the duty of good faith and fair dealing. I disagree. The Board sought to terminate Dr. Bakalis for cause under paragraph 10(B) of the contract. It was, therefore, obligated to give him a fair and impartial hearing. There is a question of fact at least as to whether the Board members who conducted the hearings were biased. See Bakalis, 35 F.3d at 326. If a jury finds bias on the part of the Board, then there would be grounds to conclude that the Board breached its contract with Dr. Bakalis and its duty of good faith and fair dealing. Accordingly, the Board's motion for summary judgment on counts I and II of the complaint is denied.

### Defamation

■ The parties agree that Dr. Bakalis' defamation claim against the individual defendants is primarily based on the Board members' adoption of the notice of reasons for seeking his dismissal, Defs.' Ex. 6, and the subsequent publication of portions of that notice by certain newspapers. The individual defendants argue that they are protected from Dr. Bakalis' defamation claim by an absolute privilege.

> Absolute privilege is a defense in a defamation action against government officials. . . . Absolute immunity, or privilege, represents a severe restriction on the right of the individual to be secure in his reputation. . . . The restriction is justified by the countervailing policy that officials of government should be free to exercise their duties without fear of potential civil liability.

Geick v. Kay, 236 Ill.App.3d 868, 603 N.E.2d 121, 127, 177 Ill.Dec. 340, 346 (2nd Dist.1992), appeal denied, 148 Ill.2d 641, 610 N.E.2d 1262, 183 Ill.Dec. 18 (1993), cert. denied, 509 U.S. 924, 113 S.Ct. 3040, 125 L.Ed.2d 726 (1993). The statements of an official to whom absolute privilege applies cannot be the subject of a defamation action if those statements were "reasonably related" to the official's duties. Id., 603 N.E.2d at 127–28, 177 Ill.Dec. at 346–47.

■ Dr. Bakalis does not dispute that absolute privilege applies to the individual defendants as trustees of the Board. Moreover, he has not submitted any evidence demonstrating that it was the individual defendants who informed the newspapers of the notice of reasons for his termination. Thus Dr. Bakalis argues only that the individual defendants did not act within the scope of their official duties when adopting the notice. Dr. Bakalis, concedes, however, that "the duties of the Board members included making the hiring and firing decisions of the president and chief executive officer of the College." Illinois law indicates that Dr. Bakalis' concession is wise, as it provides that it is the Board's responsibility "[t]o employ such personnel as may be needed [and] to establish policies governing their employment and dismissal. . . ." 110 ILCS 805/3–42. Consequently, in making the charges against Dr. Bakalis, the individual defendants acted within the scope of their official duties and are therefore absolutely immune from any liability stemming from the defamation claim based on the charges. Dr. Bakalis' attempt to avoid this conclusion by contending that the charges were false cannot succeed. "An absolute privilege cannot be overcome by a showing of improper motivation or knowledge of falsity . . . i.e., made with malice. . . .." Geick, 603 N.E.2d at 127, 177 Ill. Dec. at 346 (citations omitted).

The remainder of Dr. Bakalis' defamation cause of action is grounded on defendant

---

**4.** Defendants' final contention addressing Dr. Bakalis' due process claim is that defendants Golembeski and Durkin are entitled to summary judgment on this claim because neither of them participated in the post-termination hearing. Dr. Bakalis' due process claim, however, seeks recovery not only for the post-termination hearing, but also for the pre-termination hearing, in which Ms. Golembeski and Mr. Durkin took part. They cannot obtain summary judgment on the portion of plaintiff's due process claim based on the post-termination hearing, as granting summary judgment on part of a claim is improper. Ambre v. Joe Madden Ford, 881 F.Supp. 1187, 1193 (N.D.Ill.1995).

Golembeski's statements to Lynda Norton, a citizen of the Triton District who had numerous contacts with plaintiff and Ms. Golembeski and who ran for trustee of the Board in November, 1991. It is undisputed that Ms. Norton asserts that Ms. Golembeski told her on many occasions that she felt Dr. Bakalis was unqualified, incompetent, and "just a politician." It is further undisputed that "[t]he only specific incident when Norton remembers Golembeski making any such remark occurred on the evening of January 21, 1992, which was the night of a Triton College Board meeting." Defs.' Rule 12(M) Stmt. at ¶ 176.

A plaintiff must file an action for slander within one year "after the cause of action accrued," which generally is the date of publication of the defamatory material to a third person. 735 ILCS 5/13–201; *Withall v. Capitol Federal Savings of America*, 155 Ill. App.3d 537, 508 N.E.2d 363, 367, 108 Ill.Dec. 202, 206 (1st Dist.1987). Dr. Bakalis filed the original complaint in this lawsuit on January 26, 1993, more than one year after Ms. Golembeski's January 21, 1992 statement. The only evidence that Dr. Bakalis submits in support of his assertion that Ms. Golembeski made defamatory statements to Ms. Norton after January 21, 1992 is Ms. Norton's deposition at pages 45–50. *See* Pl.'s Rule 12(N) Stmt. at ¶ 177. In this portion of her deposition, however, Ms. Norton does not indicate that Ms. Golembeski slandered Dr. Bakalis to Ms. Norton after January 21, 1992. Ms. Norton testified on these pages of her deposition that she could not even remember if she spoke with Ms. Golembeski in the spring or summer of 1992. *See* Norton Dep. at pp. 46, 50. Because Dr. Bakalis has not pointed to any evidence in the record showing that Ms. Golembeski defamed Dr. Bakalis to Ms. Norton after January 21, 1992, Dr. Bakalis cannot maintain his defamation claim arising out of Ms. Golembeski's alleged statements to Ms. Norton. Accordingly, the individual defendants are entitled to summary judgment on Dr. Bakalis' defamation claim.

### Tortious Interference with Contract

In count IV, Dr. Bakalis alleges that the individual defendants tortiously inter-

fered with his contract with the Board by terminating him in order to provide employment contracts to their political allies. The individual defendants argue that they are absolutely privileged from liability under count IV because in firing Dr. Bakalis, they were simply carrying out their duty and were therefore acting within the scope of their authority. *See Geick*, 603 N.E.2d at 127–30, 177 Ill.Dec. at 346–49. If the individual defendants terminated Dr. Bakalis' employment only to give contracts to their political allies, their action was not reasonably related to their duties. Because Dr. Bakalis has failed to point to any evidence establishing that the individual defendants terminated his employment to give contracts to their political allies, a proposition that he would bear the burden of proving at trial, defendants are entitled to a finding that they are absolutely immune from liability under count IV and therefore entitled to summary judgment on this count. *See Bell v. Purdue University*, 975 F.2d 422, 430 (7th Cir.1992).

### Conclusion

For the foregoing reasons, the Board's motion for summary judgment is denied, and the individual defendants' motion for summary judgment is granted in part and denied in part.